**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

KATHRYN G. BUNDA,

Plaintiff,

vs.

JOHN E. POTTER, Individually and in
his official position as Postmaster
General,

Defendant.

No. C 03-3102-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE
PARTIES' MOTIONS IN LIMINE**

---

**TABLE OF CONTENTS**

*I.* **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.* **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *A. The Defendant's Motion In Limine* . . . . . . . . . . . . . . . . . . . . . . . . 3
      *1. The challenged evidence and arguments of the parties* . . . . . . 3
      *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
         *a.* *Evidence of harassment of Bunda outside of the
            limitations period* . . . . . . . . . . . . . . . . . . . . . . . . . 4
         *b.* *Evidence of harassment of other women outside of the
            limitations period* . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *B. The Plaintiff's Motion In Limine* . . . . . . . . . . . . . . . . . . . . . . . . . 6
      *1. The challenged evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
         *a.* *Challenged medical testimony and records* . . . . . . . . . 7
         *b.* *Evidence of settlement discussions* . . . . . . . . . . . . . . 11
         *c.* *Evidence of administrative proceedings* . . . . . . . . . . 11
         *d.* *Evidence of plaintiff's "past acts"* . . . . . . . . . . . . . . 14
         *e.* *Evidence of Bunda's tax returns* . . . . . . . . . . . . . . . 15
         *f.* *Evidence of Bunda's divorce* . . . . . . . . . . . . . . . . . 17

        **g.**     *Evidence of FMLA leave* . . . . . . . . . . . . . . . . . . . . 18

        **h.**     *Pay, hours, and leave records of other employees* . . . . 19

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. INTRODUCTION

In this action, plaintiff Kathryn Bunda, who was and is an employee of the United States Postal Service (USPS), at the Fort Dodge, Iowa, Post Office, asserts claims of sexual harassment and retaliation during her employment against defendant John E. Potter, the Postmaster General of the USPS. The court considered the factual background to this lawsuit in some detail in its ruling on the motion for summary judgment by the three defendants originally named in the lawsuit. *See Bunda v. Potter*, 369 F. Supp. 2d 1039, 1042-44 (N.D. Iowa 2005).[1] For present purposes, suffice it to say that Bunda alleges sexual harassment by Ray Davidson in 1999, when Davidson was not a supervisor, and in 2000, when he was a "204B temporary supervisor," as well as retaliation by Davidson and others for her complaints about sexual harassment by Davidson. Trial in this matter is set to begin on November 7, 2005.

This matter comes before the court pursuant to the Postmaster General's October 3, 2003, Motion In Limine (docket no. 54), and Bunda's October 3, 2003, Motion In

---

[1] Although Bunda originally named the United States Postal Service and her alleged harasser, Ray Davidson, as defendants, in addition to the Postmaster General, in its ruling on the defendants' motion for summary judgment, the court ruled, *inter alia*, that the only proper defendant in this action is John E. Potter, the Postmaster General, *see* 42 U.S.C. § 2000e-16(c), and dismissed the USPS and Davidson from this action.

Limine (docket no. 55). Each motion was timely resisted and is now ripe for disposition. Because the court finds no legal or factual overlap between the parties' motions in limine, the court will consider the motions chronologically rather than topically.

## II. LEGAL ANALYSIS

### A. The Defendant's Motion In Limine

### 1. The challenged evidence and arguments of the parties

In his Motion In Limine, the Postmaster General seeks to exclude two categories of evidence: (1) any and all evidence of alleged sexual harassment outside of the 45-day limitations period for Title VII claims by a postal worker, because the plaintiff has purportedly failed to state a "present violation" and has failed to allege a "continuing violation"; and (2) evidence of other women who may claim that Ray Davidson "touched or pinched them" outside of the 45-day limitations period. Bunda resisted exclusion of either category of evidence in a response filed October 10, 2005 (docket no. 56).

In support of exclusion of evidence of sexual harassment of Bunda outside of the 45-day limitations period, the Postmaster General relies on Rules 402 and 403 of the Federal Rules of Evidence and the Supreme Court's decision in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002). He contends that there is no act of alleged harassment within the 45-day limitations period that meets the definition of sexual harassment under Title VII, nor were there any individual incidents or combination of incidents outside of the limitations period that were sufficiently severe or pervasive to constitute actionable harassment. He also contends that there is no sufficient showing of a connection between the incidents inside and outside of the limitations period to establish a "continuing violation." In her resistance, Bunda points out that the court ruled on the defendant's motion for summary judgment that there was sufficient evidence in the record

for a reasonable jury to find that actions by Davidson did constitute a "present violation" and a "continuing violation." She also argues that *Morgan* does not require that a particular incident within the limitations period, standing alone, constitute harassment, because *Morgan* requires only that the smallest portion of the illegal "practice" must occur within the limitations period for the claim to be timely.

In support of exclusion of evidence that other women may have been pinched or touched by Davidson outside of the limitations period, the Postmaster General argues that such evidence is untimely, irrelevant, unduly prejudicial, and in conflict with *Morgan*. The Postmaster argues that none of the conduct in question, if it actually occurred, rises to the level of being "sexual in nature," so that such incidents are not sufficiently harassing or severe. He also argues that there is no evidence of any complaints by other women about such conduct after July 26, 1999. In her resistance to exclusion of this evidence, Bunda argues that evidence that Davidson touched or pinched other women, even outside of the limitations period, does give rise to inferences that the environment at the USPS office in Fort Dodge was sexually hostile and does establish that the USPS was aware of Davidson's conduct. She also argues that the Eighth Circuit Court of Appeals has recognized that evidence of harassment of others is relevant to these issues, and that the probative value of the evidence in question here is not outweighed by the risk of unfair prejudice, because it is limited in extent and is offered for a limited purpose.

### 2. Analysis

#### a. Evidence of harassment of Bunda outside of the limitations period

Bunda is correct that, in its summary judgment ruling, the court ruled that there was sufficient evidence under *Morgan* to generate jury questions on whether there was a "present violation" and whether there was a "continuing violation." *See Bunda*, 369 F. Supp. 2d at 1051-58. The court finds that the Postmaster General's motion in limine to

exclude evidence of harassment of Bunda outside of the limitations period is nothing more than a backdoor attack on the ruling denying his motion for summary judgment on the same grounds. Moreover, the Postmaster General has not demonstrated that the court's summary judgment ruling was manifestly erroneous or that the record is now sufficiently different that the court should revisit and reject its prior ruling. Therefore, this portion of the Postmaster General's motion for summary judgment will be summarily denied.

### *b.*    *Evidence of harassment of other women outside of the limitations period*

The court is equally unimpressed with the Postmaster General's arguments to exclude evidence of harassment of other women outside of the limitations period, because it is clearly an attempt to pre-try the case, instead of recognizing that the evidence that the Postmaster General seeks to exclude is relevant evidence that helps generate a jury question on Bunda's harassment claim. The Eighth Circuit Court of Appeals has recognized that harassment directed at others *of which the plaintiff was aware* can constitute evidence of a hostile environment as to the plaintiff. *See Madison v. IBP, Inc.*, 257 F.3d 780, 793 (8th Cir. 2001) ("Here, Madison introduced evidence that other women and African American employees were also discriminated against and harassed. This evidence was relevant as to whether IBP maintained a hostile work environment, whether it intended to harass and discriminate against women and African Americans, and whether IBP's justifications for its refusal to discipline Madison's harassers or to promote her were pretextual."), *vacated and rev'd on other grounds*, 536 U.S. 919 (2002); *Hocevar v. Purdue Fredrick Co.*, 223 F.3d 721, 741 (8th Cir. 2000) (recognizing that the court had "considered harassment of employees other than the plaintiff to be relevant to show pervasiveness of the hostile environment," although "in our circuit where we have considered conduct directed at others in upholding sexual harassment claims, that conduct

augmented evidence of harassment directed at the plaintiff," and holding that the plaintiff in that case could not rely solely on evidence of harassment directed at someone who was not an employee of the defendant, when the plaintiff was not even present to hear the hostile remarks) (citing cases); *Stricker v. Cessford Constr. Co.*, 179 F. Supp. 2d 987, 1001 (N.D. Iowa 2001) (citing *Madison* as the basis for finding that evidence of harassment directed at others, and known to the plaintiffs, was evidence that helped to generate a genuine issue of material fact on the plaintiffs' harassment claims). Where there is sufficient evidence of a "continuing violation" as to the plaintiff, as there is in this case, evidence of harassment of other women outside of the limitations period, of which the plaintiff was aware, is probative of whether or not she was subjected to a hostile environment and whether or not the defendant knew about and tolerated such harassment. Nor is such evidence unfairly prejudicial, in this case, as long as that evidence involves harassment comparable to what Bunda claims she suffered and such evidence is not presented in such quantity that it overshadows Bunda's own alleged sexual harassment.

Thus, this portion of the Postmaster General's Motion In Limine will also be denied.

### B. The Plaintiff's Motion In Limine
#### 1. The challenged evidence

In her motion in limine, Bunda seeks to exclude ten categories of evidence: (1) testimony from defendant's medical expert Dr. Laurence Krain; (2) testimony from defendant's medical expert Dr. James L. Gallagher; (3) testimony and medical records from her treating physicians, Drs. Raval, DeHaan, and Kardon; (4) evidence of settlement discussions; (5) evidence of any administrative proceedings or any findings made in such proceedings; (6) evidence of her "past acts"; (7) evidence of her tax returns for 1999

through 2003; (8) evidence of her divorce; (9) evidence relating to her leave under the Family and Medical Leave Act (FMLA); and (10) evidence of types of leave taken by every employee of the Fort Dodge postal unit from 1999 through 2003. The Postmaster General filed a response to this motion on October 11, 2005 (docket no. 57). The court finds it most convenient to consider in turn the admissibility of each category of evidence or related categories of evidence, including the parties' arguments concerning such evidence.

### 2. *Analysis*

#### a. *Challenged medical testimony and records*

The court finds that the first three categories of evidence identified in Bunda's motion in limine, each of which involves the testimony of a medical expert and/or medical records, can be discussed as a group. First, the parties agree that Dr. Laurence Krain, a defense expert, is an expert in the diagnosis and treatment of myasthenia gravis, that Dr. James L. Gallagher, another defense expert, is a psychiatrist, and that Drs. Raval, DeHaan, and Kardon are Bunda's treating physicians, a neurologist, Bunda's family doctor, and an expert on myasthenia gravis, respectively. Neither of the defense experts, Dr. Krain and Dr. Gallagher, ever examined or treated Bunda; rather, they reviewed Bunda's medical records as the basis for rendering their opinions on Bunda's diagnosis of myasthenia gravis and mental condition, respectively.

Dr. Krain has opined that Bunda does not have ocular myasthenia gravis, as diagnosed by Drs. Raval and Kardon, and instead, has an isolated fourth nerve palsy of indeterminate cause, which is not disabling, and which was neither caused nor aggravated by her alleged work place stress. Dr. Krain has also opined that Bunda does not need to be on the medication prescribed by her neurologist. Dr. Gallagher has opined that there is insufficient evidence in Bunda's medical records to support the diagnosis by Dr. DeHaan

that Bunda's mental distress has resulted in an adjustment disorder with mixed features, because many other factors need to be considered.

Bunda contends that evidence from these medical professionals, and pertinent records, should be excluded, because she is asserting only "garden variety" emotional distress as the basis for damages, not extreme mental distress requiring corroborating testimony of medical experts and evidence of treatment. While Bunda acknowledges that Dr. Krain disputes her diagnosis with myasthenia gravis, and that Dr. Gallagher disputes her diagnosis with and the cause of an adjustment disorder, these diagnoses are simply not at issue in this case, where she is not asserting that either her myasthenia gravis or her adjustment disorder, if any, is caused by anything that happened to her at work. Bunda asserts that she is claiming that she could not work overtime and missed work because of the combination of her myasthenia gravis and work place stress created by Davidson's harassment, but that this contention does not justify expert testimony. The Postmaster General resists exclusion of the testimony of these medical professionals on the ground that their testimony is responsive to testimony that Bunda has previously indicated she will elicit from treating physicians. Moreover, the Postmaster General contends that Bunda has made claims for emotional distress premised, in part, on contentions that her myasthenia gravis was aggravated by and her adjustment disorder was caused by Davidson's harassment and conduct by other officials of the USPS. Under these circumstances, the Postmaster General contends that Bunda is not making merely a claim for "garden variety" emotional distress, but a claim based on disruption of her work and personal life involving, in part, diagnoses and treatment for serious medical conditions. The Postmaster General also contends that he should be allowed to show whether disruption to Bunda's work and life, as well as her alleged emotional distress, stem from the alleged harassment or from separate medical conditions.

Both parties point to *Javeed v. Covenant Medical Center, Inc.*, 218 F.R.D. 178 (N.D. Iowa 2001), for its discussion of "garden variety" emotional distress. In *Javeed*, Chief United States Magistrate Judge John Jarvey described "garden variety" emotional distress as a "claim for emotional distress for which the plaintiff seeks no diagnosis or treatment," that is, claims of "generalized insult, hurt feelings, and lingering resentment." *Javeed*, 218 F.R.D. at 179. However, Judge Jarvey concluded that the case before him did not involve merely "garden variety" emotional distress, because the plaintiff had "self-diagnosed a number of more serious symptoms as having been caused by the sexual harassment she allege[d] in [her] case [and] [s]he sought treatment and considered antidepressant medication." *Id.* at 180. Therefore, he held that the defendant's motion for an independent examination of the plaintiff should be granted. *Id.* The *Javeed* case does not, however, directly address the admissibility of expert testimony in a case involving emotional distress that is not "garden variety."

If Bunda contends at trial that work place stressors caused emotional distress that aggravated or caused such serious conditions as myasthenia gravis or an adjustment disorder, then she clearly would not be asserting only "garden variety" emotional distress. However, she now represents that she is not going to make any such contention at trial. It is true that "medical or other expert evidence is not required to prove emotional distress in Title VII cases," although proof of some substance is required. *Eich v. Board of Regents for Central Mo. State Univ.*, 350 F.3d 752, 767 (8th Cir. 2003); *Delph v. Dr. Pepper Bottling Co.*, 130 F.3d 349, 357 (8th Cir. 1997) (while medical or other expert evidence of emotional distress is not required, the evidence must be sufficient to warrant the damages awarded); *cf. Mathieu v. Gopher News Co.*, 273 F.3d 769, 783 (8th Cir. 2001) (disability discrimination case in which the court reiterated that "'[a] plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the

plaintiff's burden'" on emotional distress) (quoting *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1065 (8th Cir. 1997)); *Webner v. Titan Distrib., Inc.*, 267 F.3d 828, 836 (8th Cir. 2001) (also holding that an ADA plaintiff was not required to present medical or other expert evidence to prove emotional distress in relation to his claim). The plaintiff is, however, "obligated to offer specific facts as to the nature of his claimed emotional distress and the causal connection to [the employer's] alleged violations." *Webner*, 267 F.3d at 836. On the other hand, expert testimony on an issue is appropriate when such evidence "will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702.

Here, if Bunda does put at issue the question of whether her myasthenia gravis or an adjustment disorder was caused or aggravated by the harassment or retaliation to which she was allegedly subjected, then expert evidence to rebut that evidence, consisting of either evidence that Bunda does not suffer from such a condition or that the condition was neither caused nor aggravated by the alleged harassment or retaliation, may become appropriate, because it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* This may be particularly true, where the plaintiff is required to show the "causal connection" between her emotional distress and her employer's alleged misconduct, *Webner*, 267 F.3d at 836, because expert testimony may be the most effective way to show or rebut evidence of such a "causal connection."[2] Similarly, Bunda's contention that neither Dr. Krain nor Dr. Gallagher has ever examined

[2]Even if Bunda does not assert that her myasthenia gravis or an adjustment disorder was caused or aggravated by the alleged harassment or retaliation, the Postmaster General would still be entitled to put on evidence that other stressors in Bunda's life, not the alleged harassment or retaliation, were at least partly responsible for the claimed emotional distress. However, the court cannot assess at this time whether expert testimony would be required to demonstrate that emotional distress was caused by such "other" stressors.

her and, instead, relied only on a review of her records, goes to the weight rather than the admissibility of their "expert" testimony, if that testimony is otherwise relevant. Bunda would be entitled to explore the bases for Dr. Krain's and Dr. Gallagher's opinions, *see* FED. R. EVID. 705, but the fact that their opinions were based on review of records rather than examinations does not necessarily mean that those opinions were based on insufficient facts or data, or unreliable principles or methods, or that these experts misapplied the principles and methods of diagnosis in this case. *See* FED. R. EVID. 702 (requirements for admissibility of expert testimony).

Thus, Bunda is not entitled to a blanket exclusion of the medical experts' testimony or the pertinent medical records, but neither is the Postmaster General entitled to submit such evidence unless and until an issue to which such evidence would be relevant is actually raised by Bunda in front of the jury. Therefore, the first three parts of Bunda's motion in limine will be denied.

### b. *Evidence of settlement discussions*

The next category of evidence that Bunda seeks to exclude is evidence of settlement discussions. The Postmaster General agrees that such evidence is inadmissible pursuant to Rule 410 of the Federal Rules of Evidence, and so does the court. Therefore, this part of Bunda's motion in limine will be granted.

### c. *Evidence of administrative proceedings*

The parties dispute the admissibility of the next category of evidence that Bunda seeks to exclude, which is evidence of any administrative proceedings on Bunda's administrative complaint of sexual harassment and retaliation or any findings made in such proceedings. Bunda contends that, although she was required to exhaust administrative remedies, and an administrative ruling was made, she is entitled to *de novo* consideration of her case in judicial proceedings. She contends that reference to any administrative

findings would be unduly prejudicial. She also contends that any EEO reports or documents that allude to administrative proceedings should be redacted to eliminate any mention of administrative proceedings. The Postmaster General, on the other hand, contends that admission of administrative findings and documents in subsequent judicial proceedings is a matter in the court's discretion. He contends that administrative findings are not binding, but may nevertheless be admissible evidence in subsequent judicial proceedings. The Postmaster General also contends that documents and exhibits from the administrative proceedings may be used as exhibits at trial, by either party, and may also be used for impeachment purposes.

Both parties rely on *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304 (8th Cir. 1984), *cert. denied*, 469 U.S. 1041 (1984), in support of their positions. The *Johnson* decision focused on the admissibility of administrative *determinations and findings*, not all evidence generated in or for such proceedings, and the court held that the admissibility of the administrative *determinations and findings* was within the discretion of the court. *See id.* at 1309. Subsequently, in *White v. Honeywell, Inc.*, 141 F.3d 1270 (8th Cir. 1998), the Eighth Circuit Court of Appeals reiterated that it "'leave[s] questions concerning the admission or exclusion of EEOC [and presumably other administrative] determinations to the sound discretion of the trial court.'" *White*, 141 F.3d at 1277 (quoting *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1105 (8th Cir. 1997)). Specifically, "'[t]he court must exercise its discretion, however, to ensure that unfair prejudice does not result from a conclusion based on a cursory EEOC review of the very facts examined in depth at trial.'" *Id.* (again quoting *Estes*, and citing *Johnson* as in accord). Nevertheless, the court recognized that the sequence of a plaintiff's administrative charges of discrimination and their outcomes could be relevant to an expert's diagnosis of the plaintiff's condition, the sequence of events, and the plaintiff's testimony of improper acts by the defendant. *Id.*

(finding no abuse of discretion of the district court's findings in this regard). However, where evidence of administrative outcomes is permitted, the opposing party should be allowed to present rebuttal evidence, such as evidence about how the administrative investigation differs from the kind of fact finding that occurs in a court of law, about the meaning of administrative findings, such as a "no probable cause" finding, and about a charging party's options after a "no probable cause" finding, and also indicated that the court should instruct the jurors that they must make their own determinations based on the evidence presented in the judicial proceedings. *Id.* at 1278.

In light of the discretion left to the court to decide the admissibility of administrative findings in *Johnson* and *White*, the court finds that there are several facets to this court's resolution of this part of Bunda's motion in limine. The court does not find simple references to the fact that prior administrative proceedings *occurred* to be sufficiently prejudicial to outweigh the admissibility of evidence used in those proceedings, such that any indication of prior administrative proceedings must be eliminated from any and all exhibits or testimony. *See* FED. R. EVID. 403 (relevant evidence may be excluded if its probative value is outweighed, for example, by the potential for unfair prejudice). Also, evidence that was *used* in administrative proceedings is not inadmissible simply because of that prior use; rather, the admissibility of such evidence depends upon whether it is otherwise admissible in judicial proceedings, including admissibility under hearsay and hearsay exception rules. On the other hand, the court concludes that *findings or determinations* in the administrative proceedings are potentially too unfairly prejudicial to be admitted in these judicial proceedings, because they suggest that the jury should follow some administrative tribunal's findings and determinations rather than make independent findings based on the evidence presented in the judicial proceedings. *See White*, 141 F.3d at 1277 (acknowledging the potential for prejudice from such evidence). Merely

instructing the jury to make such an independent determination of issues presented is not, in this court's view, necessarily sufficient to cure the potential prejudice from presenting the jury with some prior tribunal's determination. *Compare id.* (noting that, if the court admitted such evidence, it should instruct the jury to make its own findings on the basis of evidence presented in the judicial proceedings). The court also cannot see a basis, at this time, for admitting Bunda's administrative civil rights complaints, because mere allegations are not evidence of anything.

Therefore, the court will grant that part of Bunda's motion in limine seeking to exclude evidence of administrative proceedings and findings only to the extent that the parties are precluded from making reference to the *outcome* of the administrative proceedings or any *findings* of the tribunal in those proceedings. However, the admissibility of other evidence used or generated in those administrative proceedings will depend upon whether or not that evidence can be shown to be admissible in these judicial proceedings under the applicable Rules of Evidence, not merely on the basis that they were used in or bear some reference to administrative proceedings, and to the extent that Bunda seeks to exclude such evidence, ruling will be reserved.

### d.    *Evidence of plaintiff's "past acts"*

Next, Bunda seeks to exclude evidence of her "past acts." Bunda contends that none of this evidence, which she does not identify, has anything to do with her claims of sexual harassment, and thus, is intended merely for its prejudicial value. Somewhat more specifically, she contends that none of the evidence would have any bearing on the "welcomeness" or "unwelcomeness" of any sexual harassment. She also contends that none of it suggests any ambiguity about her objection to Davidson's conduct, in light of her repeated complaints to postal officials about his conduct. She contends that none of the "past acts" evidence is probative of any issue in the case, and if it is somehow

probative, it should be excluded as unfairly prejudicial. The Postmaster General contends that evidence of Bunda's "past acts," which he also does not identify, is relevant to show whether or not harassment was "offensive" and "unwelcome."

While some "past acts" might theoretically be relevant to the "welcomeness" or "unwelcomeness" of alleged sexual harassment, *see, e.g., Beach v. Yellow Freight Sys.*, 312 F.3d 391, 396 (8th Cir. 2002) (noting that the proper inquiry for purposes of determining whether conduct was "unwelcome" is "whether [the party] indicated by his conduct that the alleged harassment was unwelcome'") (quoting *Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958, 966 (8th Cir. 1999)), the court has no idea what "past acts" of the plaintiff are at issue here. Thus, the court has no way to assess whether or not the "past acts" in question are probative of any issue in the case, and if probative, whether or not they are unfairly prejudicial, such that the court can assess the admissibility of the "past acts" evidence here under Rules 401, 402, 403, or 404(b), for purposes of showing "welcomeness" or "unwelcomeness" or for any other purposes.

Therefore, this portion of Bunda's motion in limine is denied for lack of specificity.

### e.     *Evidence of Bunda's tax returns*

Next, Bunda seeks to exclude evidence of her tax returns for 1999 through 2003. While Bunda acknowledges that her income may be relevant to issues in this case, she contends that all of the information in her tax returns is not. She contends that any evidence of her income should be limited to "W2-type income" information, not any other aspect of her personal finances. In response, the Postmaster General contends that Bunda has a background in accounting and computers and has been compensated for preparing tax returns for others. The Postmaster General contends that income from such activities may not be reflected in W-2 forms provided by the USPS. The Postmaster also asserts that Bunda has income from her divorce settlement, which is not reflected in W-2 forms. The

Postmaster contends that it is both Bunda's actual income and her ability to earn income that are relevant, where the plaintiff has a duty to mitigate damages, and her tax returns are probative on these issues.

The court readily agrees that tax returns provide some evidence of a plaintiff's income and that a plaintiff has a duty to mitigate damages, but these principles do not lead inexorably to the conclusion that the plaintiff's tax returns, in their entirety, must be admitted into evidence, or that evidence of any and all "income" is somehow relevant. For example, a tax return provides a host of information about the plaintiff, including deductions and investments, that is not relevant to her damages from discrimination, her ability to mitigate damages, or whether or not she attempted to mitigate damages. Moreover, the court cannot see how any "income" from Bunda's divorce settlement could possibly be relevant to her damages from discrimination or mitigation of those damages. *See* FED. R. EVID. 402 (irrelevant evidence is inadmissible). What is relevant in this case is the income that the plaintiff actually did earn from working and what income she reasonably could have earned from working to mitigate her damages. Only limited portions of any tax return show such information, such as the lines showing gross income from wages, salaries, or tips, and those lines showing the activity that generated such income. Many other portions of an income tax return are of doubtful relevance and may pose some risk of unfair prejudice, such as lines showing other assets or deductions. *See* FED. R. EVID. 403 (evidence may be excluded if its probative value is outweighed by a risk of unfair prejudice).

Therefore, Bunda's motion to exclude her tax returns for 1999 through 2003 will be granted to the extent that the defendant must redact the income tax forms to show only the relevant income information indicated above before offering such tax returns into evidence in this case.

### f.     *Evidence of Bunda's divorce*

Bunda has also moved to exclude evidence of her divorce. Bunda contends that evidence of her divorce is irrelevant to any issue in this case. Therefore, she contends that it should not be mentioned or otherwise put into evidence. The Postmaster General, however, contends that Bunda's divorce may be relevant to show that she suffered emotional distress from sources other than harassment or retaliation in the work place. He contends, more specifically, that Bunda had marital problems and medical problems, which a reasonable jury could find caused some or all of her emotional distress. Because the plaintiff must show that emotional distress is caused by harassing or retaliatory conduct by the defendant to recover damages for that emotional distress in this Title VII action, the Postmaster General contends that he is entitled to present evidence of other plausible causes of that emotional distress.

The court noted above, in reference to expert evidence, that the plaintiff in a Title VII action is "obligated to offer specific facts as to the nature of his claimed emotional distress and the causal connection to [the employer's] alleged violations." *Webner*, 267 F.3d at 836. Thus, other potential sources of emotional distress are relevant to Bunda's claim that she suffered emotional distress as the result of work place harassment and retaliation. Moreover, Bunda has not shown that the evidence in question is so excessive or inflammatory that it could be found to be unfairly prejudicial; indeed, she has not identified the evidence of her divorce that she seeks to exclude with any specificity at all. Therefore, the court will deny this portion of Bunda's motion in limine, but the court cautions the parties that it will not allow excessive evidence concerning Bunda's divorce to be presented to the jury.

### g.    *Evidence of FMLA leave*

The penultimate category of evidence that Bunda seeks to exclude is evidence relating to her leave under the Family and Medical Leave Act (FMLA). Bunda contends that the Postmaster General has identified Defendant's Exhibit F as "FMLA documents." However, she contends that there is no FMLA issue in this case and that these documents, consisting primarily of medical records, should be excluded from this trial on the same relevance grounds that the court should exclude the medical records identified in her third category of challenged evidence. The Postmaster General's response also harks back to his arguments about the admissibility of the medical records in the third category of challenged evidence: The Postmaster General contends that Bunda has or will put her medical condition at issue and that these medical records are, therefore, relevant to the defense's position that no medical condition was either caused or aggravated by alleged work place harassment or retaliation. The Postmaster General also argues that the FMLA documents are relevant for the further purpose of showing whether Bunda's absences from work were related to work place harassment and retaliation or other, unrelated medical conditions.

In light of the parties' arguments concerning this evidence, the court's analysis also parallels its analysis of the admissibility of the medical records identified in the plaintiff's third category of evidence, with one additional consideration. If Bunda asserts at trial that either her myasthenia gravis or her adjustment disorder was caused or aggravated by work place harassment or retaliation, medical records would certainly become relevant, even if they are identified as "FMLA" records. Moreover, if Bunda contends that she missed work because of harassment or retaliation, the Postmaster General would be entitled to show that Bunda missed work in whole or in part because of unrelated medical conditions, a showing to which the "FMLA" records are or might be relevant.

Therefore, the court will reserve ruling on the admissibility of this category of evidence until it can determine whether the evidence becomes relevant in the context of contentions made to the jury.

### h.     Pay, hours, and leave records of other employees

Finally, Bunda seeks to exclude evidence of types of leave taken by every employee of the Fort Dodge postal unit from 1999 through 2005. The Postmaster General contends that this category of evidence also includes information about the income of all employees based on overtime pay. Bunda contends that, except to the extent that the information relates to her, as reflected in her own Exhibits G, H, and I, these records are irrelevant. She contends that the only purpose of this evidence is to suggest that she took too much leave, as compared to other employees, but this evidence leaves out the fact that she took more leave because of harassment by Davidson. She also contends that many of the employees were in different classifications and had different duties, so that they were in no way similarly situated for purposes of any realistic comparison. The Postmaster General, however, contends that these records are relevant to contentions by Bunda about her ability to work overtime and the effects of Davidson's harassment on her income and hours. Therefore, the Postmaster General contends that this evidence is admissible at least for purposes of impeachment.

The court concludes that, without some context for this evidence, it is difficult to assess its admissibility. For example, if Bunda does assert that Davidson's harassment deprived her of overtime hours and otherwise negatively impacted her use of various kinds of leave, the Postmaster General would be entitled to demonstrate how Bunda's overtime and leave compared with other employees. However, the scope of the comparison should reasonably be limited to employees with a job grade or classification and job duties similar to Bunda's. For the moment, the court must reserve ruling on the admissibility of this

category of evidence until and unless it becomes relevant based on contentions actually presented to the jury.

## III.  CONCLUSION

Upon the foregoing,

1.     The Postmaster General's October 3, 2003, Motion In Limine (docket no. 54) is **denied in its entirety**.

2.     Bunda's October 3, 2003, Motion In Limine (docket no. 55) is **granted in part, denied in part, and ruling is reserved in part**.  More specifically,

a.     **Ruling is reserved** on the part of Bunda's motion seeking to exclude testimony from defendant's medical expert Dr. Laurence Krain;

b.     **Ruling is reserved** on the part of Bunda's motions seeking to exclude testimony from defendant's medical expert Dr. James L. Gallagher;

c.     **Ruling is reserved** on the part of Bunda's motion seeking to exclude testimony and medical records from her treating physicians, Drs. Raval, DeHaan, and Kardon;

d.     That part of Bunda's motion seeking to exclude evidence of settlement discussions is **granted**;

e.     That part of Bunda's motion seeking to exclude evidence of any administrative proceedings or any findings made in such proceedings is **granted only to the extent** that the parties are precluded from making reference to the *outcome* of the administrative proceedings or any *findings* of the tribunal in those proceedings, but **ruling is otherwise reserved** on the admissibility of other evidence used or generated in those administrative proceedings, as explained more fully herein;

f. That part of Bunda's motion seeking to exclude evidence of her "past acts" is **denied** for lack of specificity;

g. That part of Bunda's motion seeking to exclude evidence of her tax returns for 1999 through 2003 is **granted to the extent that** the defendant must redact the income tax forms to show only the relevant income information indicated herein before offering such tax returns into evidence in this case, but is **otherwise denied**;

h. That part of Bunda's motion seeking to exclude evidence of her divorce is **denied**, but the court cautions the parties that it will not allow excessive evidence concerning Bunda's divorce to be presented to the jury;

i. **Ruling is reserved** on that part of Bunda's motion seeking to exclude evidence relating to her leave under the Family and Medical Leave Act (FMLA); and

j. **Ruling is reserved** on that part of Bunda's motion seeking to exclude evidence of types of leave taken by every employee of the Fort Dodge postal unit from 1999 through 2003, although any such evidence, if admissible, must be limited as explained here.

**IT IS SO ORDERED.**

**DATED** this 24th day of October, 2005.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA