**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

KATHRYN G. BUNDA,

        Plaintiff,

vs.

JOHN E. POTTER, Individually and
in his official position as Postmaster
General,

        Defendant.

Nos. C 03-3102-MWB

**PRELIMINARY AND FINAL**
**INSTRUCTIONS TO THE JURY**

---

## TABLE OF CONTENTS

**PRELIMINARY INSTRUCTIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    NO. 1 - PRELIMINARY INSTRUCTIONS . . . . . . . . . . . . . . . . . . . 1
    NO. 2 - DUTY OF JURORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    NO. 3 - BURDEN OF PROOF . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    NO. 4 - THE PLAINTIFF'S CLAIMS . . . . . . . . . . . . . . . . . . . . . . . 5
    NO. 5 - HOSTILE ENVIRONMENT SEXUAL HARASSMENT . . . . 6
    NO. 6 - RETALIATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    NO. 7 - ORDER OF TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    NO. 8 - DEFINITION OF EVIDENCE . . . . . . . . . . . . . . . . . . . . 14
    NO. 9 - CREDIBILITY OF WITNESSES . . . . . . . . . . . . . . . . . . 16
    NO. 10 - STIPULATED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . 18
    NO. 11 - DEPOSITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    NO. 12 - INTERROGATORIES . . . . . . . . . . . . . . . . . . . . . . . . . 20
    NO. 13 - OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    NO. 14 - BENCH CONFERENCES . . . . . . . . . . . . . . . . . . . . . . 22

NO. 15 - NOTE-TAKING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
NO. 16 - CONDUCT OF JURORS DURING TRIAL . . . . . . . . . . . 24

**FINAL INSTRUCTIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
NO. 1 - INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
NO. 2 - IMPEACHMENT OF WITNESSES . . . . . . . . . . . . . . . . 27
NO. 3 - HOSTILE ENVIRONMENT SEXUAL HARASSMENT . . . 28
NO. 4 - RETALIATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
NO. 5 - DAMAGES—IN GENERAL . . . . . . . . . . . . . . . . . . . . 42
NO. 6 - ITEMS OF DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . 44
NO. 7 - DELIBERATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

**VERDICT FORM**

# PRELIMINARY INSTRUCTION NO. 1 - PRELIMINARY INSTRUCTIONS

Members of the jury, before the lawyers make their opening statements, I give you these preliminary instructions to help you better understand the trial and your role in it. Consider these instructions, together with any oral instructions given to you during the trial and the written final instructions given at the end of the trial, and apply them as a whole to the facts of the case. In considering these instructions, the order in which they are given is not important.

## PRELIMINARY INSTRUCTION NO. 2 - DUTY OF JURORS

It will be your duty to decide from the evidence what the facts are.  You, and you alone, are the judges of the facts.  You will hear the evidence, decide what the facts are, and then apply those facts to the law which I will give you in these preliminary instructions, any instructions given during the trial, and in the final instructions at the conclusion of the case.  You will then deliberate and reach your verdict.  You are the sole judges of the facts; but you must follow the law as stated in my instructions, whether you agree with it or not.

You have been chosen and sworn as jurors in this case to try the issues of fact presented by the parties.  Do not allow sympathy or prejudice to influence you.  The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I will give it to you.

In this case, the defendant is John E. Potter, the Postmaster General, as the representative of a government agency, the United States Postal Service.  As I explained during jury selection, for the sake of convenience, I will refer to the defendant simply as the Post Office.  In other words, I will treat the Post Office, the government agency that Mr. Potter represents, as the defendant.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  The mere fact that a party is a government agency does not mean that it is entitled to any greater or lesser consideration by you.  All persons, including plaintiff Bunda and defendant Post Office, stand equal before the

2

law, and are entitled to the same fair consideration by you.  When a government agency is involved, of course, it may act only through natural persons, such as its employees and administrators, as its agents.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be.

## PRELIMINARY INSTRUCTION NO. 3 - BURDEN OF PROOF

In these instructions, you are told that your verdict depends on whether you find certain facts have been proved.  The burden of proving a fact is upon the party whose claim or defense depends upon that fact.   In this case, unless I tell you otherwise, plaintiff Bunda bears this burden of proof.

The party with the burden of proof must prove facts by the "greater weight of the evidence."   To prove something "by the greater weight of the evidence" means to prove that it is more likely true than not true.  The "greater weight of the evidence" is determined by considering all of the evidence and deciding which evidence is more believable.  If, on any issue in the case, you find that the evidence is equally balanced, then you cannot find that the issue has been proved.

The "greater weight of the evidence" is not necessarily determined by the greater number of witnesses or exhibits a party has presented.  The testimony of a single witness that produces in your mind a belief in the likelihood of truth is sufficient for proof of any fact and would justify a verdict in accordance with such testimony.  This is so, even though a number of witnesses may have testified to the contrary, if, after consideration of all of the evidence in the case, you hold a greater belief in the accuracy and reliability of that one witness.

You may have heard of the term "proof beyond a reasonable doubt."  That is a stricter standard, which applies in criminal cases.  It does not apply in civil cases such as this.  You should, therefore, put it out of your minds.

4

**PRELIMINARY INSTRUCTION NO. 4 - THE PLAINTIFF'S CLAIMS**

As I explained during jury selection, plaintiff Bunda asserts two claims against defendant Post Office: (1) hostile environment sexual harassment; and (2) retaliation for complaining about sexual harassment. The plaintiff's "sexual harassment" and "retaliation" claims consist of "elements," which Bunda must prove by the greater weight of the evidence to win on those claims.

In the following instructions, I will give you preliminary instructions on the elements of Bunda's claims to assist you in understanding the evidence. However, these preliminary instructions provide only a preliminary outline of the elements of Bunda's claims. At the end of the trial, I will give you further final written instructions that explain these claims. Because the final instructions are more detailed, those instructions govern on the elements of Bunda's claims.

# PRELIMINARY INSTRUCTION NO. 5 - HOSTILE ENVIRONMENT SEXUAL HARASSMENT

Plaintiff Bunda's first claim is that she was subjected to hostile environment sexual harassment by Ray Davidson.  I will now give you preliminary instructions on the elements of Bunda's hostile environment sexual harassment claim and the Post Office's affirmative defense to this claim.

### *Ms. Bunda's claim*

To win her claim of hostile environment sexual harassment, plaintiff Bunda must prove the following seven elements by the greater weight of the evidence:

*One*, Ms. Bunda was subjected to sexually offensive conduct or conditions imposed by Ray Davidson;

*Two*, such conduct was unwelcome;

*Three*, such conduct was because of Ms. Bunda's sex;

*Four*, such conduct was sufficiently severe or pervasive that a reasonable person in Ms. Bunda's position would find the work environment to be sexually hostile or abusive;

*Five*, at the time that such conduct occurred, and as a result of such conduct, Ms. Bunda believed her work environment to be sexually hostile or abusive;

*Six*, the Post Office knew or should have known of the offensive conduct; and

6

*Seven*, the Post Office failed to take prompt and appropriate corrective action to end the hostile environment sexual harassment.

*If* Ms. Bunda fails to prove all seven of these elements by the greater weight of the evidence, *then* your verdict must be for the Post Office on Ms. Bunda's claim of hostile environment sexual harassment.  However, *if* Ms. Bunda proves all seven of these elements by the greater weight of the evidence, *then* you must consider whether she has proved a "continuing violation" and whether the Post Office has proved its affirmative defense, as explained below.

### *"Continuing violation"*

Ms. Bunda alleges hostile environment sexual harassment by Mr. Davidson from 1999 through November of 2000.  Under the law applicable to a postal employee, such as Ms. Bunda, a plaintiff who wishes to assert a sexual harassment claim must initiate contact with a counselor with the Equal Employment Opportunity Commission (EEOC) within 45 days of the alleged harassment.  Ordinarily, a postal employee can only recover damages for sexual harassment that occurred within the 45-day period *prior to* her contact with the EEOC counselor.  The parties agree that Ms. Bunda contacted an EEOC counselor on August 7, 2000.  Therefore, ordinarily, she would not be able to recover for any harassment that occurred before June 23, 2000.

However, under federal law, a plaintiff may also recover damages for sexual harassment that occurred *prior to* the 45-day period, *if* the plaintiff shows that the harassment prior to that period was part of a "continuing violation."  A "continuing

violation" is one in which a pattern of illegal conduct began before the 45-day period, but continued into the 45-day period. Plaintiff Bunda may prove a "continuing violation" in this case by proving the following:

*One*, at least one act contributing to the hostile environment sexual harassment occurred within the 45-day period between June 23, 2000, and August 7, 2000; and

*Two*, harassment prior to June 23, 2000, was part of the same unlawful employment practice—that is, part of the same actionable hostile environment—as harassment within the 45-day period.

To decide whether or not harassment prior to June 23, 2000, is part of the same unlawful employment practice as harassment after June 23, 2000, you should consider the following factors: (1) the nature of the harassment; (2) the frequency and continuity of the harassment; and (3) whether the harassment involved the same harasser.

If Ms. Bunda proves a "continuing violation," then she may recover damages for the whole pattern of harassment that was part of the "continuing violation." Otherwise, she may only recover damages for harassment that occurred within the 45-day period from June 23, 2000, to August 7, 2000.

However, Ms. Bunda will not be able to recover *any* damages on this claim, if the Post Office proves its affirmative defense, as explained below.

### The Post Office's affirmative defense

As an affirmative defense, the Post Office contends that Ms. Bunda's claim of hostile environment sexual harassment was not timely filed. This defense also

8

arises because Ms. Bunda was required to initiate contact with a counselor with the Equal Employment Opportunity Commission (EEOC) within 45 days of the alleged harassment. If she did not do so, her hostile environment sexual harassment claim is "time-barred." Consequently, for Ms. Bunda's hostile environment claim to be timely, at least one act contributing to the hostile environment must have occurred within the 45-day period between June 23, 2000, and August 7, 2000.

The Post Office contends that there was no act contributing to the hostile environment during the 45-day period, so that Ms. Bunda's hostile environment sexual harassment claim is time-barred. To prove this affirmative defense, the Post Office must prove by the greater weight of the evidence that no act contributing to the hostile environment occurred during the 45-day period from June 23, 2000, to August 7, 2000. The "act contributing to the hostile environment" must be part of the same unlawful employment practice—that is, part of the same actionable hostile environment—as harassment on which Ms. Bunda's hostile environment sexual harassment claim is based. Therefore, to decide whether the act within the 45-day period was an act contributing to the hostile environment, you should consider the following factors: (1) the nature of the harassment; (2) the frequency and continuity of the harassment; and (3) whether the harassment involved the same harasser.

*If* the Post Office proves this affirmative defense, *then* Ms. Bunda's hostile environment sexual harassment claim is time-barred, *and* you must enter a verdict in favor of the Post Office on this claim. However, *if* the Post Office fails to prove this affirmative defense, *and* Ms. Bunda proves all of the elements of her claim of

hostile environment sexual harassment, *then* she will be entitled to damages in some amount on this claim.

## PRELIMINARY INSTRUCTION NO. 6 - RETALIATION

Plaintiff Bunda's second claim is that the Post Office retaliated against her for opposing sexual harassment.

### *Ms. Bunda's claim*

To win on her "retaliation" claim, Ms. Bunda must prove the following three elements by the greater weight of the evidence:

*One*, Ms. Bunda opposed or complained about conduct that was, or that she reasonably believed was, sexual harassment;

*Two*, the Post Office subsequently took adverse employment action against her; and

*Three*, Ms. Bunda's opposition to, or complaint about, sexual harassment was a motivating factor for the adverse employment action taken by the Post Office.

If Ms. Bunda fails to prove all three of these elements by the greater weight of the evidence, then your verdict must be for the Post Office on Ms. Bunda's claim of retaliation.  However, if Ms. Bunda proves all three of these elements by the greater weight of the evidence, then you must consider the Post Office's "same decision" defense, as explained below.

### *The Post Office's "same decision" defense*

If Ms. Bunda proves all three of the elements of her "retaliation" claim, then you must consider whether the Post Office has proved, by the greater weight of the

11

evidence, that it would have made the same decision about its actions toward Ms. Bunda or the conditions of her employment regardless of her opposition to or complaints about sexual harassment.   *If* the Post Office proves that it would have made the same decision, *then* you will still enter a verdict in favor of Ms. Bunda on this claim, *but* you cannot award damages to Ms. Bunda on this claim.  Instead, she is only entitled to certain relief provided by the court.

## PRELIMINARY INSTRUCTION NO. 7 - ORDER OF TRIAL

The trial will proceed as follows:

After these preliminary instructions, the plaintiff's lawyer may make an opening statement. Next, the lawyer for the defendant may make an opening statement. An opening statement is not evidence, but simply a summary of what the lawyer expects the evidence to be.

After opening statements, the plaintiff will present evidence and call witnesses and the lawyer for the defendant may cross-examine them. Following the plaintiff's case, the defendant may present evidence and call witnesses and the lawyer for the plaintiff may cross-examine them.

After the evidence is concluded, I will give you most of the final instructions. The lawyers will then make their closing arguments to summarize and interpret the evidence for you. As with opening statements, closing arguments are not evidence. I will then give you the remaining final instruction on deliberations, and you will retire to deliberate on your verdict.

13

## PRELIMINARY INSTRUCTION NO. 8 - DEFINITION OF EVIDENCE

Evidence is:

1.      Testimony.

2.      Exhibits I admit into evidence.

3.      Stipulations, which are agreements between the parties.

Evidence may be "direct" or "circumstantial." The law makes no distinction between the weight to be given to direct and circumstantial evidence. The weight to be given any evidence is for you to decide.

A particular item of evidence is sometimes admitted only for a limited purpose, and not for any other purpose. I will tell you if that happens, and instruct you on the purposes for which the item can and cannot be used.

The fact that an exhibit may be shown to you does not mean that you must rely on it more than you rely on other evidence.

The following are not evidence:

1.      Statements, arguments, questions, and comments by the lawyers.

2.      Objections and rulings on objections.

3.      Testimony I tell you to disregard.

4.      Anything you saw or heard about this case outside the courtroom.

The weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or non-existence of any fact. Also, the weight of the evidence is not necessarily determined merely by the number or volume of documents or exhibits. The weight of evidence depends upon its quality, which means how convincing it is, and not necessarily upon its quantity. For

14

example, you may choose to believe the testimony of one witness, if you find that witness to be convincing, even if a number of other witnesses contradict that witness's testimony.  The quality and weight of the evidence are for you to decide.

**PRELIMINARY INSTRUCTION NO. 9 - CREDIBILITY OF WITNESSES**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe all of what a witness says, only part of it, or none of it.

In deciding what testimony to believe, consider the witness's intelligence, the opportunity the witness had to have seen or heard the things testified about, the witness's memory, any motives that witness may have for testifying a certain way, the manner of the witness while testifying, whether that witness said something different at an earlier time, the witness's drug or alcohol use or addiction, if any, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.  In deciding whether or not to believe a witness, keep in mind that people sometimes see or hear things differently and sometimes forget things.  You need to consider, therefore, whether a contradiction results from an innocent misrecollection or sincere lapse of memory, or instead from an intentional falsehood or pretended lapse of memory.

Ordinarily, witnesses may only testify to factual matters within their personal knowledge.  However, you may hear evidence from persons described as experts. Persons may become qualified as experts in some field by knowledge, skill, training, education, or experience.  Such experts may state their opinions on matters in that field and may also state the reasons for their opinions.  You should consider expert testimony just like any other testimony.  You may believe all of what an expert says, only part of it, or none of it, considering the expert's qualifications, the soundness

16

of the reasons given for the opinion, the acceptability of the methods used, any reason the expert may be biased, and all of the other evidence in the case.

**PRELIMINARY INSTRUCTION NO. 10 - STIPULATED FACTS**

The plaintiff and the defendant have agreed or "stipulated" to certain facts and have reduced these facts to a written agreement or stipulation. Either counsel may, throughout the trial, read to you all or a portion of the stipulated facts. You should treat these stipulated facts as having been proved.

18

## PRELIMINARY INSTRUCTION NO. 11 - DEPOSITIONS

Certain testimony from a deposition may be read into evidence.  A deposition is testimony taken under oath before the trial and preserved in writing.  Consider that testimony as if it had been given in court.

## PRELIMINARY INSTRUCTION NO. 12 - INTERROGATORIES

During this trial, you may hear the word "interrogatory." An interrogatory is a written question asked by one party of another, who must answer it under oath in writing. Consider interrogatories and the answers to them as if the questions had been asked and answered here in court.

## PRELIMINARY INSTRUCTION NO. 13 - OBJECTIONS

The lawyers may make objections and motions during the trial that I must rule upon.  If I sustain an objection to a question before it is answered, do not draw any inferences or conclusions from the question itself.  Also, the lawyers have a duty to object to testimony or other evidence that they believe is not properly admissible. Do not hold it against a lawyer or the party the lawyer represents because the lawyer has made objections.

## PRELIMINARY INSTRUCTION NO. 14 - BENCH CONFERENCES

During the trial it may be necessary for me to talk with the lawyers out of the hearing of the jury, either by having a bench conference here while the jury is present in the courtroom, or by calling a recess. Please be patient, because while you are waiting, we are working. The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence, to avoid confusion and error, and to save your valuable time. We will, of course, do what we can to keep the number and length of these conferences to a minimum.

## PRELIMINARY INSTRUCTION NO. 15 - NOTE-TAKING

If you want to take notes during the trial, you may, but be sure that your note-taking does not interfere with listening to and considering all the evidence.  If you choose not to take notes, remember that it is your own individual responsibility to listen carefully to the evidence.

Notes you take during the trial are not necessarily more reliable than your memory or another juror's memory.  Therefore, you should not be overly influenced by the notes.

If you take notes, do not discuss them with anyone before you begin your deliberations.  At the end of each day, please leave your notes on your chair.  At the end of the trial, you may take your notes out of the notebook and keep them, or leave them, and we will destroy them.  No one will read the notes, either during or after the trial.

You will notice that we have an official court reporter making a record of the trial.  However, we will not have typewritten transcripts of this record available for your use in reaching your verdict.

23

## PRELIMINARY INSTRUCTION NO. 16 - CONDUCT OF JURORS DURING TRIAL

You will not be required to remain together while court is in recess. However, to insure fairness, you as jurors must obey the following rules:

*First*, do not talk among yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide on your verdict.

*Second*, do not talk with anyone else about this case, or about anyone involved with it, until the trial has ended and you have been discharged as jurors.

*Third*, when you are outside the courtroom do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended and your verdict has been accepted by me.  If someone should try to talk to you about the case during the trial, please report it to me.

*Fourth*, during the trial you should not talk with or speak to any of the parties, lawyers, or witnesses involved in this case—you should not even pass the time of day with any of them.  It is important that you not only do justice in this case, but that you also give the appearance of doing justice.  If a person from one side of the case sees you talking to a person from the other side—even if it is simply to pass the time of day—an unwarranted and unnecessary suspicion about your fairness might be aroused.  If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator or the like, it is because they are not supposed to talk or visit with you.

24

*Fifth*, do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.  If you want, you can have your spouse or a friend clip out any stories and set them aside to give you after the trial is over.  I can assure you, however, that by the time you have heard the evidence in this case you will know more about the matter than anyone will learn through the news media.

*Sixth*, do not do any research—on the Internet, in libraries, in the newspapers, or in any other way—or make any investigation *about this case* on your own.  You must decide this case based on the evidence presented in court and the law as I explain it to you in my instructions.

*Seventh*, do not make up your mind during the trial about what the verdict should be.  Keep an open mind until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.

*Eighth*, if at anytime during the trial you have a problem that you would like to bring to my attention, or if you feel ill or need to go to the restroom, please send a note to the Court Security Officer, who will deliver it to me.  I want you to be comfortable, so please do not hesitate to inform me of any problem.

**DATED** this 7th day of November, 2005.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

25

## FINAL INSTRUCTION NO. 1 - INTRODUCTION

Members of the jury, the written instructions I gave you at the beginning of the trial and the oral instructions I gave you during the trial remain in effect. I now give you some additional instructions.

The instructions I am about to give you, as well as the preliminary instructions given to you at the beginning of the trial, are in writing and will be available to you in the jury room. *All* instructions, whenever given and whether in writing or not, must be followed. This is true even though some of the instructions I gave you at the beginning of the trial are not repeated here.

In considering these instructions, the order in which they are given is not important.

Neither in these instructions nor in any ruling, action, or remark that I have made during the course of this trial have I intended to give any opinion or suggestion as to what your verdict should be.

# FINAL INSTRUCTION NO. 2 - IMPEACHMENT OF WITNESSES

In Preliminary Instruction No. 9, I instructed you generally on the credibility of witnesses. However, I will now give you some further instructions on how the credibility of witnesses can be "impeached."

Any witness may be discredited or "impeached" by contradictory evidence; by a showing that the witness testified falsely concerning a material matter; or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony. If earlier statements of a witness were admitted into evidence, they were not admitted to prove that the contents of those statements were true. Instead, you may consider those earlier statements only to determine whether you think they are consistent or inconsistent with the trial testimony of the witness, and, therefore, whether they affect the credibility of that witness.

If you believe that a witness has been discredited or impeached, it is your exclusive right to give that witness's testimony whatever weight you think it deserves.

27

## FINAL INSTRUCTION NO. 3 - HOSTILE ENVIRONMENT
## SEXUAL HARASSMENT

Plaintiff Bunda's first claim is that she was subjected to hostile environment sexual harassment by Ray Davidson.  I will now explain in more detail the elements of Ms. Bunda's claim of hostile environment sexual harassment and the Post Office's affirmative defense to her claim.

### *Ms. Bunda's claim*

To win her claim of hostile environment sexual harassment, plaintiff Bunda must prove the following seven elements by the greater weight of the evidence:

*One*, Ms. Bunda was subjected to sexually offensive conduct or conditions imposed by Ray Davidson.

*Two*, such conduct was unwelcome.

> Conduct may be "unwelcome," even if the plaintiff submitted to it or participated in it.  Conduct is "unwelcome" if the plaintiff did not solicit or invite the conduct and regarded the conduct as undesirable or offensive.

*Three*, such conduct was because of the plaintiff's sex.

> Offensive conduct does not amount to unlawful sexual harassment unless the harassment was "because of the plaintiff's sex."  The fundamental issue is whether members of one sex were subjected to unfavorable conditions of employment that the members of the other

28

sex were not. Thus, harassing conduct was "because of the plaintiff's sex" when members of the plaintiff's sex were exposed to conditions of employment to which members of the other sex were not exposed. The harassment need not have been explicitly sexual in nature, nor must the plaintiff show that only women were subjected to the harassment. However, she must prove by the greater weight of the evidence that women were the primary target of such harassment, that is, that a majority of Mr. Davidson's harassing conduct was directed toward females.

*Four*, such conduct was sufficiently severe or pervasive that a reasonable person in the plaintiff's position would have found the work environment to be sexually hostile or abusive.

The objectionable environment must be one that a reasonable person in the plaintiff's position would have found to be hostile and abusive because of the sexual harassment. Whether an environment is sufficiently hostile or abusive must be determined by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating or merely offensive; the status of the alleged harasser as either a co-worker or a supervisor; the physical proximity of the alleged harasser; the presence or absence of other people; and whether it unreasonably interfered with an employee's work performance. However, no single factor is required in order to find a work environment hostile or abusive. Federal anti-harassment laws do not prohibit genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. Nor are they intended as a general civility

code. Therefore, simple teasing, offhand comments, and
isolated incidents or isolated offensive utterances (unless
extremely serious) will not amount to sexual harassment
in the form of creation of a hostile environment.
Similarly, conduct that is boorish, chauvinistic,
unpleasant, rude, and immature may not be enough;
rather, such conduct must be sufficiently severe or
pervasive that a reasonable person in the plaintiff's
position would have found the work environment to be
hostile or abusive.

*Five*, at the time that such conduct occurred, and as a result of such conduct,
the plaintiff believed her work environment to be sexually hostile or abusive.

For sexual harassment to create a sexually hostile
work environment, the victim must, in fact, perceive the
environment to be hostile or abusive because of the sexual
harassment.

*Six*, the Post Office knew or should have known of the offensive conduct.

The Post Office knew or should have known of the
harassment if authorized agents or supervisors with a
reporting duty (or persons who a reasonable person in Ms.
Bunda's position would have believed to have such a duty)
acquired knowledge of the sexual harassment.

To put an employer on notice that the plaintiff
believes that she is being subjected to hostile environment
sexual harassment, the plaintiff must either declare,
indicate, or imply that complained of conduct has
something to do with sex, *or* the circumstances reported
must at least "arguably" suggest an intent to harass the
plaintiff on the basis of her sex. The circumstances
reported "arguably" suggest an intent to sexually harass
the plaintiff if, for example, they involved references to
the plaintiff's sex sufficient for a reasonable person to

30

conclude that they suggested that the alleged harasser intended to harass the plaintiff because of her sex.

Once an employer is on notice that the employee is being subjected to a sexually-hostile work environment, the employer can be held liable for the entire hostile environment, even if the employee has never reported that specific incidents were motivated by an intent to sexually harass her. However, the employee must establish that the employer knew of the incidents and must show that those incidents are part of the sexually hostile environment.

*Seven*, the Post Office failed to take prompt and appropriate corrective action to end the hostile environment sexual harassment.

If the employer knows or should have known of harassment, the employer must undertake an investigation. The test of the adequacy of the investigation is its reasonableness in light of what the employer knew or should have known about the harassment and the seriousness of the harassment alleged. An investigation is not adequate if it is carried out in such a way that it prevents the discovery of serious and significant harassment, such that the remedy chosen by the employer cannot be reasonably calculated to prevent the harassment. Similarly, an employer's decision to do nothing on the basis of an inadequate investigation supports a finding that the employer did not take prompt and appropriate corrective action.

However, the law does not require that investigations into sexual harassment complaints be perfect, and an employer may take adequate remedial action even if its investigation was flawed. The ultimate question is whether the employer's remedial action was reasonably calculated to prevent further sexual harassment.

31

The reasonableness of an employer's remedy will depend on its ability to stop sexual harassment by the person who engaged in the sexual harassment. In evaluating the adequacy of the remedy, you may also take into account the remedy's ability to persuade potential harassers to refrain from unlawful conduct. However, an employer is liable for the sexual harassment if no remedy is undertaken, or if the remedy attempted is not reasonably likely to be effective.

In deciding whether the Post Office took prompt and appropriate corrective action, factors you may consider include the amount of time that elapsed between the notice and corrective action; the options available to the employer, possibly including employee training sessions, transferring the harasser, written warnings, reprimands in personnel files, or termination; and whether or not the measures ended the harassment. Because it is not always possible for an employer to eliminate offensive behavior completely, your consideration of the effectiveness of the remedy should not look to whether offensive behavior actually ceased, but to whether the remedial and preventive action was reasonably calculated to end the sexual harassment. Thus, an employer cannot be held liable if it did all that it reasonably could to stop the sexual harassment, even if the sexual harassment continued.

*If* Ms. Bunda has failed to prove all seven of these elements by the greater weight of the evidence, *then* your verdict must be for the Post Office on Ms. Bunda's claim of hostile environment sexual harassment. However, *if* Ms. Bunda has proved all seven of these elements by the greater weight of the evidence, *then* you must consider whether she has proved a "continuing violation"

32

*and* whether the Post Office has proved its affirmative defense by the greater weight of the evidence, as explained below.

### *"Continuing violation"*

Ms. Bunda alleges hostile environment sexual harassment by Mr. Davidson from 1999 through November of 2000. Under the law applicable to a postal employee, such as Ms. Bunda, a plaintiff who wishes to assert a sexual harassment claim must initiate contact with an Equal Employment Opportunity (EEO) Counselor within 45 days of the alleged harassment. Ordinarily, a postal employee can only recover damages for sexual harassment that occurred within the 45-day period *prior to* her contact with the EEO Counselor. The parties agree that Ms. Bunda contacted an EEO Counselor on August 7, 2000. Therefore, ordinarily, she would not be able to recover for any harassment that occurred before June 23, 2000.

However, under federal law, a plaintiff may also recover damages for sexual harassment that occurred *prior to* the 45-day period, *if* the plaintiff shows that the harassment prior to that period was part of a "continuing violation." A "continuing violation" is one in which a pattern of illegal conduct began before the 45-day period, but continued into the 45-day period. Plaintiff Bunda may prove a "continuing violation" in this case by proving the following by the greater weight of the evidence:

*One*, at least one act contributing to the hostile environment sexual harassment occurred within the 45-day period between June 23, 2000, and August 7, 2000.

> Only the smallest portion of the sexually harassing conduct needs to occur within the limitations period for the sexual harassment to be a "continuing violation."

*Two*, harassment prior to June 23, 2000, was part of the same unlawful employment practice—that is, part of the same actionable hostile environment—as harassment within the 45-day period.

> To decide whether or not harassment prior to June 23, 2000, is part of the same unlawful employment practice as harassment after June 23, 2000, you should consider the following factors: (1) the nature of the harassment; (2) the frequency and continuity of the harassment; and (3) whether the harassment involved the same harasser. The "nature of the harassment" means that you should consider whether the incidents involved the same type of employment actions, or the same kind of harassing conduct, such as jokes, derogatory acts, unwelcome physical contact, or negative comments and epithets based on a protected characteristic. The "frequency and continuity of the harassment" means that you should consider whether the incidents were frequent enough to be part of the same pattern of harassment. A lengthy break in the harassment does not necessarily establish that harassment before the 45-day period is not part of a "continuing violation." For example, where acts contributing to a hostile work environment occur on days 1-100 and day 401, it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole. More pertinent factors are whether the same harasser committed the same harassing

34

> acts before and after the limitations deadline; whether the
> employer was made aware of the earlier harassment; and
> whether there was any "intervening action" by the
> employer that could fairly be said to have caused the later
> acts of harassment to be unrelated to the earlier, otherwise
> untimely acts. No single factor is required for you to find
> a "continuing violation," nor are you required to find that
> all three factors are present. It is for you to weigh the
> evidence in light of these factors to determine whether Ms.
> Bunda has proved, by the greater weight of the evidence,
> that the incidents in question were part of the same
> actionable hostile environment.

If Ms. Bunda proves a "continuing violation" by the greater weight of the
evidence, then she may recover damages for the whole pattern of harassment that
was part of the "continuing violation." Otherwise, she may only recover damages
for harassment that occurred within the 45-day period from June 23, 2000, to
August 7, 2000.

However, Ms. Bunda will not be able to recover *any* damages on this claim,
if the Post Office proves its affirmative defense by the greater weight of the
evidence, as explained below.

### The Post Office's affirmative defense

As an affirmative defense, the Post Office contends that Ms. Bunda's claim
of hostile environment sexual harassment was not timely filed. This defense also
arises because Ms. Bunda was required to initiate contact with an EEO Counselor
within 45 days of the alleged harassment. If she did not do so, her hostile
environment sexual harassment claim is "time-barred." Consequently, for

35

Ms. Bunda's hostile environment claim to be timely, at least one act contributing to the hostile environment must have occurred within the 45-day period between June 23, 2000, and August 7, 2000.

The Post Office contends that there was no act contributing to the hostile environment during the 45-day period, so that Ms. Bunda's hostile environment sexual harassment claim is time-barred. To prove this affirmative defense, the Post Office must prove by the greater weight of the evidence that no act contributing to the hostile environment occurred during the 45-day period from June 23, 2000, to August 7, 2000. The "act contributing to the hostile environment" must be part of the same unlawful employment practice—that is, part of the same actionable hostile environment—as harassment on which Ms. Bunda's hostile environment sexual harassment claim is based. Therefore, to decide whether the act within the 45-day period was an act contributing to the hostile environment, you should consider the following factors: (1) the nature of the harassment; (2) the frequency and continuity of the harassment; and (3) whether the harassment involved the same harasser.

*If* the Post Office proves this affirmative defense by the greater weight of the evidence, *then* Ms. Bunda's hostile environment sexual harassment claim is time-barred, *and* you must enter a verdict in favor of the Post Office on this claim. However, *if* the Post Office fails to prove this affirmative defense, *and* Ms. Bunda proves all of the elements of her claim of hostile environment sexual harassment, *then* she will be entitled to damages in some amount on this claim.

Because proof of this "timeliness" affirmative defense would bar Ms. Bunda's hostile environment sexual harassment claim entirely, the first question you will be

36

asked in the Verdict Form concerning her hostile environment sexual harassment claim is whether or not the Post Office has proved this affirmative defense.

## FINAL INSTRUCTION NO. 4 - RETALIATION

Plaintiff Bunda's second claim is that the Post Office retaliated against her for opposing sexual harassment.

### *Ms. Bunda's claim*

To win on her "retaliation" claim, Ms. Bunda must prove the following three elements by the greater weight of the evidence:

*One*, Ms. Bunda opposed or complained about conduct that was, or that she reasonably believed was, sexual harassment.

> Federal anti-discrimination laws make it unlawful for an employer to discriminate against an employee because of the employee's "opposition" to conduct or employment practices made unlawful under those laws. Ms. Bunda contends that she opposed sexual harassment or conduct that she reasonably believed was sexual harassment by protesting Mr. Davidson's treatment of her to her supervisor, June Martindale, on at least one occasion.

> If the conduct that a plaintiff opposed was not, in fact, unlawful, the plaintiff must prove that a reasonable person could have believed that the incidents about which she complained violated the anti-discrimination laws. In deciding whether a reasonable person could have believed that the incidents about which a plaintiff complained violated anti-discrimination laws, you must determine whether the conduct and resulting environment were sufficiently sexually hostile or abusive by looking at all the

38

circumstances, including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.

*Two*, the Post Office subsequently took adverse employment action against the plaintiff.

Not everything that makes an employee unhappy is an "adverse employment action" sufficient to prove a retaliation claim. Rather, an "adverse employment action" must be more disruptive than a mere inconvenience, alteration of job responsibilities, or change in duties and working conditions that causes no materially significant disadvantage. Thus, an adverse employment action consists of the kind of serious employment consequences that adversely affect or undermine the employee's position, even if the employee is not discharged, demoted, or suspended. You may also consider the cumulative effect of the employer's actions to determine whether the employer's allegedly retaliatory actions amounted to sufficiently adverse employment action, rather than determining whether any individual action upon which the retaliation claim relies was sufficiently adverse.

Ms. Bunda *alleges* that the Post Office retaliated against her by giving Ms. Bunda letters of warning; denying Ms. Bunda work breaks; proposing that disciplinary actions be taken against Ms. Bunda; and requesting that Ms. Bunda work contrary to seniority rules. It is for you to decide whether the allegedly retaliatory conduct constituted an "adverse employment action."

39

*Three*, Ms. Bunda's opposition to or complaint about sexual harassment were a motivating factor for the adverse employment action taken by the Post Office.

Something was a "motivating factor" if it played a part in a person's decision. However, it need not have been the only reason for the person's decision. You may find that Ms. Bunda's opposition to sexual harassment was a motivating factor in the Post Office's adverse employment action if Ms. Bunda has proved by the greater weight of the evidence that the Post Office's stated reasons for its actions are not the true reasons, but are, instead, a pretext to hide a retaliatory decision.

However, you cannot find that the "motivating factor" element has been proved simply because you disagree with the Post Office's decisions or think that those decisions were harsh or unreasonable. An employer may suspend or otherwise adversely affect an employee for any reason, good or bad, fair or unfair, as long as it is not for a *retaliatory* reason. Therefore, the fact that an employment decision may be erroneous, based on poor administration or bad policy, or based on poor communication or lack of study, or even based on personal dislike or animosity, does not constitute retaliation, *unless* the intent to retaliate also played a part in the decision to take adverse action against the plaintiff.

In short, the "motivating factor" element is only proved if you find by the greater weight of the evidence that Ms. Bunda's *opposition to sexual harassment* was a motivating factor for the Post Office's adverse employment action. It is for you to decide whether Ms. Bunda's opposition to or complaint about sexual harassment were a "motivating factor" for the adverse employment action by the Post Office.

*If* Ms. Bunda has failed to prove all three of these elements by the greater weight of the evidence, *then* your verdict must be for the Post Office on Ms. Bunda's claim of retaliation.  However, *if* Ms. Bunda proves all three of these elements by the greater weight of the evidence, *then* you must consider the Post Office's "same decision" defense, as explained below.

### The Post Office's "same decision" defense

If Ms. Bunda proves all three of the elements of her "retaliation" claim, then you must consider whether the Post Office has proved, by the greater weight of the evidence, that it would have made the same decision about its actions toward Ms. Bunda or the conditions of her employment regardless of her opposition to or complaint about sexual harassment.  *If* the Post Office proves by the greater weight of the evidence that it would have made the same decision, *then* you will still enter a verdict in favor of Ms. Bunda on this claim, *but* you cannot award damages to Ms. Bunda on this claim.  Instead, she is only entitled to certain relief provided by the court.

41

# FINAL INSTRUCTION NO. 5 - DAMAGES—IN GENERAL

The fact that I am instructing you on the proper measure of damages should not be considered as an indication that I have any view as to whether any party is entitled to your verdict in this case. Instructions as to the measure of damages are given only for your guidance in the event that you should find that the plaintiff is entitled to damages in accord with the other instructions.

If you find in favor of the plaintiff on a particular claim, then you must award her such sum as you find by the greater weight of the evidence will fairly and justly compensate her for any damages that you find were proximately caused to her by the conduct of the defendant at issue in that claim. An act is a "proximate cause" of damage if the act was a substantial factor in producing the damage and the damage would not have happened except for the act. "Substantial" means that the act had such an effect in producing damage as to lead a reasonable person to regard it as a cause of the damage.

In arriving at an amount for any particular item of damages, you cannot establish a figure by taking down the estimate of each juror as to damages and agreeing in advance that the average of those estimates shall be your award of damages. Rather, you must use your sound judgment based upon an impartial consideration of the evidence.

Remember, throughout your deliberations, you must not engage in any speculation, guess, or conjecture. You must not award damages under these

42

Instructions by way of punishment or through sympathy. Your judgment must not be exercised arbitrarily or out of sympathy or prejudice for or against any of the parties.

You must award the full amount of damages, if any, that the plaintiff has proved by the greater weight of the evidence. However, the amount you assess for damages must not exceed the amount proximately caused by the wrongful conduct of the defendant as proved by the evidence. Also, do not allow any amount awarded for one item of damages on a particular claim to be included in any amount awarded for any other item of damages on that claim, because the plaintiff is not entitled to recover duplicate damages.

A plaintiff has a duty under the law to "mitigate" her damages—that is, to exercise reasonable diligence under the circumstances to minimize her damages. Therefore, if you find that the Post Office has proved by the greater weight of the evidence that the plaintiff failed to seek out or take advantage of an opportunity to reduce her damages that was reasonably available to her, then you must reduce her damages by the amount that she reasonably could have avoided if she had sought out or taken advantage of such an opportunity.

Attached to these Instructions is a Verdict Form, which you must fill out. In the "Damages" sections of the Verdict Form, you should only award those damages, if any, that the plaintiff has proved by the greater weight of the evidence were proximately caused by the defendant's wrongful conduct toward the plaintiff that is at issue in the particular claim you are considering.

43

### FINAL INSTRUCTION NO. 6 - ITEMS OF DAMAGES

On each claim, plaintiff Bunda seeks damages for emotional distress and backpay. I will explain these items of damages in turn.

*Emotional distress damages*. Damages for "emotional distress" are the amount of damages that will reasonably compensate the plaintiff for the emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life that were proximately caused by the wrongful conduct of the Post Office at issue in the claim in question. The amount, if any, that you assess for damages for emotional distress cannot be measured by an exact or mathematical standard, and the plaintiff is not required to introduce evidence of the monetary value of such damages. However, you must use your sound judgment based upon an impartial consideration of the evidence to determine the amount of such damages. Damages for emotional distress must compensate the plaintiff for any emotional distress that she suffered from the time of the wrongful conduct in question until the time that you give your verdict.

The amount of emotional distress damages, if any, that you award for each claim may be the same or different, but the damages awarded must reflect the amount of emotional distress, if any, caused to the plaintiff by the wrongful conduct at issue in each particular claim.

*Backpay.* Ms. Bunda also seeks an award of backpay for wages she lost because of sexual harassment and/or retaliation. She contends that she would have

44

worked and been paid for additional hours but for her inability to accept overtime hours because of sexual harassment and/or retaliation. In other words, she contends that the sexual harassment and/or retaliation constituted a "constructive restraint on work hours." Therefore, "backpay" is the amount of any wages that Ms. Bunda would have earned from hours that she would have worked but for her inability to accept overtime hours because of sexual harassment and/or retaliation. To prove that she is entitled to backpay because of a "constructive restraint on work hours," Ms. Bunda must prove the following elements by the greater weight of the evidence:

*One*, either through action or inaction, the Post Office made Ms. Bunda's working conditions intolerable.

> An employee's dissatisfaction with working conditions, without more, does not establish a "constructive restraint on work hours." Rather, a "constructive restraint on work hours" occurs when an employer, through action or inaction, renders an employee's working conditions so intolerable that the employee essentially is forced to limit her hours of employment. Working conditions are "intolerable" if a reasonable person in Ms. Bunda's situation would have considered that giving up overtime work hours was the only reasonable alternative. Also, an employee has an obligation not to assume the worst and jump to conclusions too quickly. Therefore, an employee must ordinarily give an employer a reasonable opportunity to work out the problem before she decides that giving up overtime work hours is the only reasonable alternative.

45

*Two*, Ms. Bunda's inability to work overtime hours was a reasonably foreseeable result of the Post Office's actions or failure to act to correct the situation.

*If* Ms. Bunda has proved both of these elements by the greater weight of the evidence as to a particular claim, either sexual harassment, retaliation, or both, *then* she has proved a "constructive restraint on work hours" for that claim or those claims, *and* she is entitled to backpay for overtime hours that she did not work because of sexual harassment or retaliation.  However, *if* she has failed to prove these elements, then she cannot recover backpay.

You may award backpay for each claim on which Ms. Bunda prevails, if you find that Ms. Bunda lost overtime hours as a direct result of the wrongful conduct alleged in that claim.  However, Ms. Bunda can only recover one award of backpay, even if she prevails on both of her claims.  I will prevent the award of duplicate damages for backpay, if you award backpay as damages on more than one claim.

## FINAL INSTRUCTION NO. 7 - DELIBERATIONS

In conducting your deliberations and returning your verdict, there are certain rules that you must follow.

*First*, when you go to the jury room, you must select one of your members as your foreperson. That person will preside over your discussions and speak for you here in court.

*Second*, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement if you can do so without violence to individual judgment. Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors. Do not be afraid to change your opinions if the discussion persuades you that you should, but do not come to a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are not partisans, you are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

*Third*, if you need to communicate with me during your deliberations, you may send a note to me through the Court Security Officer, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. *Remember that you should not tell anyone—including me—how your votes stand numerically.*

47

*Fourth*, your verdict must be based solely on the evidence and on the law as I have given it to you in my instructions.  Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

*Finally*, I am giving you the Verdict Form.  A Verdict Form is simply the written notice of the decision that you reach in this case.  *Your verdict must be unanimous.*  You will take the Verdict Form to the jury room.  When you have reached a unanimous verdict, your foreperson must complete one copy of the Verdict Form and all of you must sign that copy to record your individual agreement with the verdict and to show that it is unanimous.  The foreperson must bring the signed Verdict Form to the courtroom when it is time to announce your verdict. When you have reached a verdict, the foreperson will advise the Court Security Officer that you are ready to return to the courtroom.

**DATED** this 10th day of November, 2005.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

48

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

KATHRYN G. BUNDA,

         Plaintiff,

vs.

JOHN E. POTTER, Individually and
in his official position as Postmaster
General,

         Defendant.

Nos. C 03-3102-MWB

**VERDICT FORM**

_____

On the claims of plaintiff Kathryn Bunda, we, the Jury, find as follows:

| HOSTILE ENVIRONMENT SEXUAL HARASSMENT | |
|---|---|
| **Step 1: "Timeliness" Defense** | Has the Post Office proved by the greater weight of the evidence that Ms. Bunda's hostile environment sexual harassment claim is "time-barred," as this affirmative defense is explained in Final Jury Instruction No. 3, beginning on page 35?  (*If your answer is "yes," then do not consider any other Steps in this section of the Verdict form; instead, go on to consider your verdict on Ms. Bunda's retaliation claim.  However, if your answer is "no," then you must consider the other Steps in this section of the Verdict Form concerning Ms. Bunda's claim of hostile environment sexual harassment.*) |
| | ___ Yes              ___ No |
| **Step 2: Verdict** | On Ms. Bunda's claim of hostile environment sexual harassment, as explained in Final Jury Instruction No. 3, beginning on page 28, in whose favor do you find?  (*If you find in favor of Ms. Bunda on this claim, then consider whether she has also proved a "continuing violation" in Step 3 and what damages, if any, she has proved on this claim in Step 4.  However, if you find in favor of the Post Office, then do not consider any more Steps in this section of the Verdict Form.  Instead, go on to consider your verdict on Ms. Bunda's retaliation claim.*) |
| | ___ Ms. Bunda         ___ The Post Office |

1

| Step 3: Continuing Violation | If you found in favor of Ms. Bunda in Step 2, do you find that Ms. Bunda has proved a "continuing violation," as "continuing violation" is defined in Final Jury Instruction No. 3, beginning on page 33? (*If you answered "no," then you can only award damages for harassment between June 23, 2000, and August 7, 2000. However, if you answered "yes," then you may award damages for harassment prior to June 23, 2000, that you find was part of the "continuing violation."*) | |
|---|---|---|
| | ___ No | ___ Yes |
| Step 4: Emotional Distress Damages | What amount, if any, do you award for emotional distress damages on this claim, as such damages are explained in Final Jury Instruction No. 6, beginning on page 44? | |
| | $_____ for emotional distress | |
| Step 5: Backpay | What amount, if any, do you award for backpay for a "constructive restraint on work hours," as such damages are explained in Final Jury Instruction No. 6, beginning on page 44? | |
| | $_____ for backpay | |
| **RETALIATION** | | |
| Step 1: Verdict | On Ms. Bunda's claim of retaliation, as explained in Final Jury Instruction No. 4, beginning on page 38, in whose favor do you find? (*If you find in favor of Ms. Bunda on this claim, then she is entitled to damages in some amount on this claim in Steps 3 and 4 unless the Post Office has proved its "same decision" affirmative defense, which you must consider in Step 2. However, if you find in favor of the Post Office, then do not consider any further Steps in this section of the Verdict Form. Instead, sign the Verdict Form and notify the Court Security Officer that you have reached a verdict.*) | |
| | ___ Ms. Bunda | ___ The Post Office |
| Step 2: "Same Decision" Defense | Do you find that the Post Office has proved its "same decision" defense, as explained in Final Jury Instruction No. 4, beginning on page 41? (*If your answer is "no," then consider your verdict on damages on this claim in Steps 3 and 4. However, if your answer is "yes," then you cannot award damages on this claim, because Ms. Bunda is only entitled to certain relief from the court. Therefore, if you answer is "yes," do not consider Steps 3 and 4. Instead, sign the Verdict Form and notify the Court Security Officer that you have reached a verdict.*) | |
| | ___ No | ___ Yes |

| **Step 4:** **Emotional Distress Damages** | What amount, if any, do you award for emotional distress damages on this claim, as such damages are explained in Final Jury Instruction No. 6, beginning on page 44? |
|---|---|
| | $_____ for emotional distress |
| **Step 5:** **Backpay** | What amount, if any, do you award for backpay for a "constructive restraint on work hours," as such damages are explained in Final Jury Instruction No. 6, beginning on page 44? |
| | $_____ for backpay |

**Date**: _____    **Time**: _____


_____          _____
    Foreperson                                    Juror


_____          _____
    Juror                                           Juror


_____          _____
    Juror                                           Juror


_____          _____
    Juror                                           Juror